JOHN FISHER, as Trustee, etc., Respondent, *v.* ROBERT MURDOCK, Impleaded with others, Appellant.

*Corporation — discount of note given by an officer of — limitation of charter as to.*

This action was brought by the plaintiff, as trustee in bankruptcy of the Citizens' Savings Bank, upon two drafts drawn by a firm in New York upon a firm in Charleston, accepted by the latter firm and delivered to one Palmer who was a member of both firms. Upon his application the drafts were subsequently discounted by the bank, of which he was the vice-president, and of the stock of which he owned more than four shares. The drafts were drawn and accepted for the accommodation of Palmer.

The charter of the bank provided that no director or officer of said corporation should borrow or use any portion of the funds thereof, and that no loan of money should be made by it to any stockholder owning more than four shares of stock therein. It was insisted by the defendant that the drafts were void because taken by the bank in violation of the provisions of its charter. *Held*, that the prohibitions of the charter did not apply to a case in which a loan was made to a firm, corporation or association in which an officer or stockholder of the bank was a partner, stockholder or member, and that the plaintiff was entitled to recover.

APPEAL from a judgment in favor of the plaintiff entered upon a verdict directed by the court, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

This action was brought by plaintiff, as trustee in bankruptcy of the Citizens' Savings Bank of South Carolina, against the defendants, who composed the firm of Courtney, Everett & Co., at New York, and the firm of W. C. Courtney & Co., at Charleston, to recover upon two bills of exchange drawn by said Courtney, Everett & Co. upon W. C. Courtney & Co., and accepted by the latter firm and delivered to the defendant Palmer, who obtained the same to be discounted by the Citizens' Savings Bank aforesaid, said Palmer being a member of both of said firms and also vice-president of said bank and a holder of more than four shares of the stock therein. It was claimed by the defendant that the Citizens' Savings Bank violated its charter in discounting the bills of exchange and could not, therefore, recover thereon.

*Gimball & Rives*, for the appellant.

*B. F. Watson*, for the respondent.

INGALLS, J.:

This action was brought by the plaintiff to recover of the defendants, who composed the firms of Courtney, Everett & Co., at New York and W. C. Courtney at Charleston, the amount of two bills of exchange drawn by said Courtney, Everett & Co., upon W. C. Courtney & Co., and accepted by the last-named firm, and delivered to John B. Palmer, who is one of the defendants. Palmer procured the same to be discounted by the Citizens' Savings bank. Palmer was a member of both said firms, and vice-president of said bank which was located in Charleston, South Carolina. The defendant Murdock alone answers, defends and appeals.

At the close of the evidence the defendant requested the court to direct a verdict in favor of the defendant on the grounds:

First. That the bills are illegal; that the bank under which the plaintiff claims, and in whose shoes he stands has violated its own

charter (§§ 5 and 6) by loaning money on paper on which one of its officers was directly liable, and by loaning money to a stockholder owning more than four shares of the stock of the bank, and by loaning money on paper, not secured by collateral security of any kind, and therefore, the very act by which the bank, and, through the bank, the plaintiff acquired title to the bills in question, was prohibited by statute, hence the bills founded on an illegal consideration are void and cannot be enforced.

Second. Also upon the second ground upon which the motion to dismiss was based ; such second ground was the following :

" On the ground that it being in evidence that there was an agreement between John B. Palmer and the firms of Courtney, Everett & Co., the drawers, and W. C. Courtney & Co., the acceptors, that the said Palmer would individually take care of the bills at maturity. The bank having full knowledge of such agreement took the bills subject to the legal effect of such knowledge, that the agreement made Palmer the primary debtor for the money loaned on the bills, they being in the nature of security for Palmer. Hence, when the bank extended the loan, or renewed the bills at Palmer's request, without the knowledge or consent of Courtney, Everett & Co., or W. C. Courtney & Co., that, *ipso facto*, released those firms from liability."

The foregoing are the only questions insisted upon by the defendants upon the trial, so far as I can perceive. In regard to the last-mentioned question, the evidence does not sustain the position assumed by the defendants. These facts are not shown to have been brought to the knowledge of the officers of the bank, and therefore, they did not become chargeable with notice or knowledge of any such agreement or understanding.

Palmer's knowledge not acquired while transacting, as an officer of such bank, any of its legitimate or ordinary business, would not be sufficient to charge the bank with knowledge. The mere fact that he was its vice-president, was not sufficient to charge the bank with knowledge of transactions in which Palmer participated. (Story on Agency, § 1406, p. 173 ; Angell & Ames on Corporations, § 308.) The evidence indicates that the bank became a purchaser of the bills of exchange for value, before their maturity, and without knowledge of any prior equities. The witness Sawyer, who was the assistant

cashier of the bank, states that the bills were discounted in the ordinary course of business; that he did not, nor did any other officer of the bank, to his knowledge, know or assent to any agreement between Palmer and the acceptors, that he, Palmer, should pay the drafts at maturity, and that the drawers and acceptors should not be liable thereon. Palmer's evidence is to the same effect, in regard to any knowledge by the bank of any such agreement.

The remaining question is, whether the plaintiff was prevented from recovering in this action in consequence of the violation of sections 5 and 6 of the charter of the bank.

Section 5 provides, " no director or officer of said corporation shall borrow or use any portion of the funds thereof."

Section 6 provides, " no loan of money shall be made by said corporation to any stockholder owning more than four shares therein."

This presents a grave question and one not without difficulty. Every statute should receive a reasonable interpretation, with reference to the evil intended to be remedied or prevented, or the purpose sought to be attained. The spirit and intention governs, rather than the letter, when they are in conflict. Obviously these provisions of the charter were intended to prevent the stockholders and officers of the bank from using the money of the institution for speculation or other private purpose, upon their individual responsibility. Certainly they were not intended to embarrass the bank by restricting its powers in regard to its ordinary and legitimate business. The other provisions of the charter negative any such intention. It would seem unnecessary to hold, in order to maintain this charter in its integrity, that where an officer or stockholder of the bank, was a partner in a firm, a stockholder in a corporation, or a member of an association that a loan to such partnership firm, corporation or association, by this bank, would be void, as a violation of such charter, in consequence of the interest of such stockholder or officer in such other firm, corporation or association. Now in regard to the bills of exchange in question, they were received by other parties, and discounted upon the faith of such security. In my judgment it was not a loan to Palmer in such a sense as to render it necessarily obnoxious to the provisions of such charter. So far as the evidence discloses, the bank acted in good faith, and discounted this paper in accordance with its ordinary custom and

method of transacting such business. We discover no substantial reason for interfering with the decision at the Circuit.

The judgment should be affirmed with costs.

DAVIS, P. J., and BRADY, J., concurred.

Judgment affirmed with costs.